UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE LARRY OWEN

       PLAINTIFF,                   CASE NO.    05-73442

V.                                          HONORABLE ARTHUR J. TARNOW
                                             UNITED STATES DISTRICT JUDGE
COMMISSIONER OF SOCIAL SECURITY,

                                          MAGISTRATE JUDGE
       DEFENDANT.                  DONALD A. SCHEER
                             /

**ORDER ADOPTING THE MAGISTRATE'S REPORT AND RECOMMENDATION
[D/E # 15], DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGEMENT [D/E # 11], AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [D/E # 14]**

       The Court having reviewed the Magistrate Judge's Report and Recommendation filed March 27, 2006, the administrative record, and considered Plaintiff's Objections adopts in whole the Report and Recommendation as the findings and conclusions of this Court for the reasons stated below.

**I.    INTRODUCTION**

       In this action, Plaintiff seeks Social Security Disability Insurance Benefits and Supplemental Security Income Benefits under Title II of the Social Security Act. Plaintiff alleges that he has been unable to work since June 6, 1998 due to symptoms of hepatitis C and recurrent mental depression. The administrative law judge determined Plaintiff was not entitled to disability benefits because he retained capacity to perform a restricted range of medium, unskilled work. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits.

       Plaintiff and Defendant Commissioner filed cross-motions for summary judgment. Magistrate Judge Scheer wrote a Report and Recommendation determining that there was "substantial evidence on the record that claimant remained capable of performing a restricted range of medium work activity." The Report and Recommendation concluded:

       There was medical evidence on both sides, and having examined it, the

undersigned is persuaded that substantial evidence supported the Law Judge's conclusion that Plaintiff's depression and hepatitis disorder were not disabling. In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

Plaintiff raises four arguments in his objection to the Magistrate's Report and Recommendation. First, Plaintiff contends that the ALJ formed her hypothetical questions to the vocational expert, using incomplete and inaccurate descriptions of his limitations. Second, Plaintiff argues the ALJ improperly discounted the opinions of his "treating" family physician (Dr. Aoigan), who concluded Plaintiff had chronic hepatitis, fatigue, and depression, affecting his ability to work. Plaintiff argues that the "overall medical evidence" supported the physician's conclusions, and therefore, it was unnecessary for the ALJ to discount Dr. Aoigan's conclusions on the basis that it lacked objective evidence on its own. Third, Plaintiff claims the state agency psychologist lacked expertise to conclude Plaintiff was able to perform simple unskilled work. Finally, Plaintiff argues the Magistrate Judge's reliance on Plaintiff's listed activities of daily living was misguided because the daily activity sheets were completed 2 years prior to Plaintiff's hearing.

For the reasons stated below this Court concludes that the ALJ's decision is strongly supported by substantial evidence in the record, and that each of Plaintiff's four objections fail. Although there is medical evidence to confirm that Plaintiff suffers from mental depression, he is unable to refute that he can still perform a restricted range of medium work activity. Accordingly, Magistrate Scheer's Report and Recommendation is **ADOPTED** as this Court's findings.

## II.     STATEMENT OF FACTS

Based on the following facts, there was ample evidence in the record that Plaintiff remained capable of performing a restricted range of medium work activity.

### A.     Plaintiff's Testimony

Plaintiff George Larry Owen is currently 62 years old, and was 59 at the time of the hearing. He completed two years of college, and was employed as a certified substance abuse counselor and therapist for over 15 years at various treatment centers.

Plaintiff was fired in 1998 for audio taping conversations between himself and his supervisors, and has not worked full-time since. He testified that his depression caused him to become paranoid on the job, and he began believing they "were out to get [him]."

Plaintiff also testified that he was diagnosed with hepatitis C in 1999, which caused him to suffer extreme fatigue. As a result, he had no energy, and expressed difficulty getting up in the morning.

Nonetheless, Plaintiff attempted to work part-time for a treatment center not far from his home, but claims his hepatitis and mental depression made him unable to handle even a twenty hour per week commitment.

Further, he testified that he could not walk more than a block before becoming fatigued, and that he is unable to stand for a period of over ten minutes.

According to Plaintiff, the treatment he received for his hepatitis was unsuccessful and his condition worsened.

Plaintiff alleged he suffered from arthritis, which caused pain in his back, arms, and wrists, rendering him unable to lift more than five pounds of weight in his right hand. Though, he admitted he has never received treatment for his alleged arthritic condition, and never really complained about it to doctors.

> **B.  Medical Records**
>
> **1.  Hepatitis C & Depression**

Plaintiff tested positive for hepatitis C in June 2001, and was subsequently diagnosed

with chronic hepatitis. He was asymptomatic, denying abdominal pain, fevers, chills, jaundice, or any other known liver-related symptoms of hepatitis C. Plaintiff completed treatment with pegylated interferon and ribavarin in May 2002, and was presented the option of a liver biopsy. By May 30, 2002, Plaintiff's liver enzymes began to normalize, although Plaintiff still remained positive for Hepatitis C.

Dr. N.K. Vora conducted a consultative examination of Plaintiff on July 14, 2002. She observed that he lived alone, and did not have much contact with family, friends, or neighbors. He was "withdrawn and isolated," and "stay[ed] by himself most of the time." Although Plaintiff claimed he felt depressed constantly, had crying spells, and felt "hopeless and worthless at times," he denied any delusions, hallucinations, persecution, or thoughts of being controlled by others. He also denied having suicidal or homicidal ideas at the time of the examination, but claimed he had those thoughts in the past. Dr. Vora's diagnoses included: (1) hepatitis C; (2) antisocial personality disorder; (3) major depression, recurrent and chronic; and (4) alcohol, cocaine, marijuana, and opiate dependence in remission.

Physicians prescribed Zoloft for Plaintiff's depression, although he was not seeing a psychiatrist. Plaintiff received counseling for his depression from October 14, 2002 to January 14, 2004.

### 2.    Dr. Blake's Analysis of Plaintiff's Condition

While the state agency physician Dr. Blake's analysis confirmed that Plaintiff suffered mild restrictions as the result of hepatitis C and depression, his limitations were not severe enough to constitute a "disability" within meaning of the Social Security Act.

Dr. Blake found that Plaintiff suffered only a mild restriction of his activities of daily living. Plaintiff indicated he could do household chores such as cooking, and work in his garden

without help.

Dr. Blake found Plaintiff suffered only mild limitation of his social functioning, but was not significantly limited in his ability to interact with the general public, get along with co-workers and peers, or maintain socially appropriate behavior. Plaintiff indicated he attended daily twelve-steps meetings. Reportedly, he also played chess with others, and participated in a neighborhood watch group.

Plaintiff indicated he could read for three hours per sitting, and could attend meetings. Dr. Blake concluded Plaintiff suffered moderate limitation in his abilities to: (1) maintain concentration for extended periods, and in his ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms; (2) perform scheduled activities, and maintain regular attendance; and (3) perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Blake also concluded Plaintiff had no significant limitations:

> (1) in his ability to understand and remember locations and work-like procedures;
> (2) in understanding and/or remembering short, simple, or detailed instructions, or subsequently carrying out those instructions;
> (3) in his ability to sustain an ordinary routine without special supervision, or in the ability to work with others without being distracted by them; and
> (4) the ability to make simple work-related decisions.

Dr. Blake noted no significant limitations in Plaintiff's ability to adapt to stressful circumstances at work.

### 3. Dr. Aoigan's Analysis of Plaintiff's Exertional Limitations & Fatigue

Dr. Aoigan found that Plaintiff had several exertional limitations, including the occasional inability to lift less than ten pounds, the inability to stand and/or walk for more than two hours in an eight hour day, and limited reaching, pulling, or pushing ability, including

overhead. Dr. Aoigan also indicated, based on Plaintiff's complaints, that Plaintiff "has chronic active Hepatitis C and depression with chronic fatigue affecting his activity tolerance." Dr. Aoigan's report is one of only two sources in the record that even suggest fatigue. The other is a reference to fatigue recorded while Plaintiff was treated at the Henry Ford Health System.

### C. Vocational Expert's Testimony

The vocational expert testified as follows in response to hypothetical questions posed by the ALJ:

Q: Assume for the sake of my first hypothetical that we have basically a person – the – as such as the Claimant, as to age, educational level and work experience. Assume also a hypothetical Claimant, needs a job which allows for a sit/stand option, one that does not require prolonged sitting or prolonged standing. That it also requires a low stress setting, which I define as one wherein there is no work with the general public, or in close contact with coworkers. Our hypothetical Claimant also suffers from some degree of depression, which I would rate as creating a moderate limitation in the ability to understand, remember and carry out detailed instructions. If you assume that, what jobs would our hypothetical Claimant be vocationally qualified to perform?

A: Well, first off, based on the hypothetical, the person could not do the past relevant work. The skills they developed would not, in my opinion, transfer to any jobs utilizing this (sic) particular hypothetical findings. You are therefore left, in my opinion, with unskilled work, basically. At the light level with a sit/stand option it would be entry level forms of packaging, inspecting, simple assembly and related tasks. Those are jobs that conform to your hypothetical question, Your Honor.

Q: And in the relevant market, how many, and would identify (sic) the relevant markets, how many such jobs exist?

A: The relevant market, in my opinion, would be the Greater Metropolitan Detroit Area. Unskilled, light jobs at this level, with these particular qualifications probably don't exceed, in the aggregate of the categories I gave you, approximately about 1,000.

Q: Assume for purposes of a second hypothetical that we have again basically

the same person as earlier identified. Assume further that I find that our hypothetical Claimant needs a position that – needs a low stress setting, which, again, I define as no work the general public (sic) or in close contact with coworkers, that our hypothetical Claimant does suffer with some degree of depression, which I would rate as creating a moderate limitation in the ability to understand, remember and carry out detailed instructions. If you assume that, what jobs would our hypothetical Claimant be vocationally qualified to perform? That was taking into consideration non-exertional limitation.

A: Okay. There were no exertional limitations –

Q: No exertional limitations.

A: Well, if there are no exertional limitations, I would say there's essentially – while looking at the same jobs, but you are now moved up – you could go from light to medium, and all you would do is expand the number of jobs, because you've gone up in the strength category. You have to change the nature or type of job. You've only increased the exertional capacity, and therefore enlarged the numbers, and then the number would begin to approach 30, 35,000.

Q: And is that with medium jobs alone?

A: Yes.

### D. Findings of the ALJ

Based on the record and the vocational expert's testimony, the ALJ concluded: (1) that although the claimant's Hepatitis C, depression, and substance abuse in remission are considered "severe," they did not meet or medically equal one of the listed impairments; (2) that Plaintiff's allegations regarding his limitations were not fully credible in light of the clinical evidence in the record; (3) Plaintiff is unable to perform any of his past relevant work, and has no transferable skills from any past relevant work; and (4) Plaintiff has the residual functional capacity to perform a significant range of medium work. As a result, claimant was not under a "disability," as defined in the Social Security Act, and not entitled to the requested benefits.

**E.     The Magistrate's Report and Recommendation**

Having reviewed the administrative record and both parties' Motions for Summary Judgement, the Magistrate issued a Report and Recommendation determining that although there was medical evidence on both sides, there was substantial evidence to support the Law Judge's conclusion that Plaintiff's conditions were not disabling.  The Magistrate Judge recommended that this Court deny Plaintiff's Motion, grant Defendant's motion, and dismiss the complaint.

Plaintiff filed his objections to the Magistrate Judge's report including many arguments that were previously addressed in the Report and Recommendation itself.

**III.    STANDARD OF REVIEW**

This Court's review of the ALJ's conclusions is limited.  The findings of the ALJ are conclusive if they are supported by substantial evidence based on the whole record.  42 U.S.C. § 405(g).  Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla, but less than a preponderance of evidence.  *Brainard v. Secretary of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989).  The substantial evidence test requires that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  The ALJ's decision must be affirmed, even if the court might arrive at a different conclusion based on the evidence.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  In considering the whole record, the ALJ is not required to mention or comment on each piece of evidence submitted.  *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

**IV.    PLAINTIFF'S OBJECTIONS**

   **A.    ALJ's failure to pose complete and accurate hypothetical questions to the**

### vocational expert

Plaintiff claims that in formulating hypothetical questions to the vocation expert, the ALJ failed to reference Plaintiff's moderately limited abilities to concentrate: 1) to maintain attention and concentration for extended periods; 2) to perform activities within a schedule; 3) to maintain regular attendance; 4) to be punctual with customary tolerances; 5) to complete a normal workday and work week without interruptions from psychologically based symptoms; and 6) to perform at a consistent pace without an unreasonable number and length of rest periods.

Although Plaintiff claims that his problems with concentration were both documented and confirmed, competing evidence in the form of Dr. Blake's report determined these limitations were non existent. Dr. Blake noted that Plaintiff's did not suffer significant limitation of his ability to understand and remember short, simple, or detailed instructions. The state physician also indicated Plaintiff was not significantly limited from working with others, or from interacting appropriately with the general public.

Despite this competing evidence, the ALJ's hypothetical did take into account Plaintiff's "moderate limitation in the ability to understand, remember and carry out detailed instructions," and the fact that his condition required "a low stress setting . . . one wherein there is no work with the general public, or . . . close contact with general workers." Thus, ALJ's hypothetical assumed both limitations and accurately described Plaintiff's condition as determined by the conflicting evidence.

**B.     The State Agency Psychologist was unqualified to conclude that Plaintiff was "able to perform simple unskilled work"**

Dr. Blake wrote, at the conclusion of his Mental Residual Functional Capacity Assessment:

> [Claimant] is a 58 yr old male who alleges depression. He has not been hospitalized for depression. [Claimaint] alleges being depressed for years and that

his bad attitude cost him his job in 1998. [Claimant] states he is taking Zoloft prescribed by [a physician]. He has not been seen by a psychiatrist. At [clinical examination] he states medication does not help him, sleep and appetite are poor, and he has crying spells. [Clinical examination and activities of daily living] reflect that [claimant] is able to drive, cook, clean, and take care of hygiene. He attends daily meetings, plays chess and does gardening. [Claimant] *should be able to perform simple unskilled work*.

Even if Dr. Blake lacked expertise to render an opinion that is traditionally reserved for the vocational expert, his opinion was of no consequence. Despite noting Dr. Blake's conclusion in her decision, the ALJ properly based her decision on the substantial evidence provided by the vocational expert opinion of Samuel Goldstein at the hearing.

### C. The ALJ improperly discounted the opinion of Plaintiff's family physician, who diagnosed Hepatis C, depression, and chronic fatigue

The Magistrate Judge determined that the ALJ properly discounted the opinion of Plaintiff's family physician, Dr. Aoigan, because the physician failed to provide objective medical evidence to support his diagnosis of Plaintiff's limitations. In response, Plaintiff relies on 20 C.F.R. 404.1529(c)(2) which states:

> We will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

The ALJ did not outright reject Plaintiff's evidence. In fact, on page four of the decision, the ALJ considered Dr. Aoigan's findings that Plaintiff "could not sustain work activity, even at a sedentary exertional level and had a limited ability to reach." Nonetheless, because Dr. Aoigan failed to include any objective medical findings to support his conclusion as to Plaintiff's chronic fatigue, and further, that such fatigue "affect[ed] his activity tolerance," the ALJ was not required to give special weight to Dr. Aoigan's opinion, as the treating physician. "While it is true that the SSA must apply the 'treating physician rule' in its determinations, that rule provides that deference is to be given to the opinions of treating physicians (over those of non-treating or reviewing physicians) where, *and only where*, there is objective support for those opinions in the

record." *Calvert v. Firstar Finance Inc*., 409 F.3d 286, 294 (6th Cir. 2005), citing *Harris v Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

Plaintiff also correctly argues it is unnecessary that such supporting detail for Plaintiff's alleged fatigue be contained in Dr. Aoigan's document itself. Yet, the doctor's opinion must be supportable by other medical evidence in the record, including clinical or diagnostic findings of other physicians. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). As the ALJ noted several times during the hearing, beyond mere complaints made by Plaintiff to his doctor, there is no medical evidence in the record to substantiate his claims of chronic fatigue.

### D. The Magistrate Judge improperly relied on Plaintiff's listed activities of daily living because the daily activity sheets were completed two years prior to Plaintiff's hearing

On page two of the Objections to the Magistrate Judge's Report and Recommendation, Plaintiff argues that the Magistrate Judge improperly relied on a two-year-old list of Plaintiff's activities of daily living, to find that the ALJ's conclusions were correct and supported by substantial evidence.

Plaintiff's argument fails. Plaintiff was given opportunities to present this or any new evidence at the February 2004 hearing, two years after the initial completion of the sheets. The ALJ sent Plaintiff a "Notice of Hearing" in which she informed Plaintiff of his entitlement to submit additional evidence: "If there is more evidence you want to submit, get it to me right away. If you cannot get the evidence to me before the hearing, bring it to the hearing." At the hearing, the ALJ allowed Plaintiff further opportunities to submit additional evidence, and agreed to let Plaintiff submit such evidence even after the hearing. Plaintiff failed to do so, and should not be allowed to vacate the decision on the basis that the evidence he provided was stale.

### V.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Report is accepted and entered as the findings and conclusions of this Court.

As a result, the Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Objections to the Report and Recommendation are **DENIED**, and the case is **DISMISSED**.

**IT IS SO ORDERED**.


                        s/Arthur J. Tarnow
                        Arthur J. Tarnow
                        United States District Judge

Dated:  September 5, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 5, 2006, by electronic and/or ordinary mail.

                        s/Theresa E. Taylor
                        Case Manager